## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL COPP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | CASE NO. |
| | : | 3:03CV119 (AWT) |
| THE STATE OF CONNECTICUT | : | |
| DEPARTMENT OF VETERANS AFFAIRS, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| | : | |
| CHRISTOPHER DUNN, | : | |
| Department of Veterans Affairs, | : | |
| Home & Hospital, Security Officer, | : | |
| *in his individual capacity*, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| HUGO ADAMS, | : | |
| Department of Veterans Affairs, | : | |
| Home & Hospital, Director of Security, | : | |
| *in both his official and individual capacities*, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| DORIS FARGO, | : | |
| Department of Veterans Affairs, | : | |
| Home & Hospital, Nursing Supervisor, | : | |
| *in both her official and individual capacities*, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| CLAUDETTE GIBSON, | : | |
| Department of Veterans Affairs, | : | |
| Home & Hospital, Nursing Supervisor, | : | |
| *in both her official and individual capacities*, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| WILLIAM BONE, | : | |
| Department of Veterans Affairs, | : | |

| | |
|---|---|
| Home & Hospital, B Clinic R.N., | : |
| *in both his official and individual capacities,* | : |
| | : |
| Defendant, | : |
| | : |
| JOANNE BLOOM, | : |
| Department of Veterans Affairs, | : |
| Home & Hospital, Hospital, Administrator, | : |
| *in both her official and individual capacities,* | : |
| | : |
| Defendant, | : |
| | : |
| ALAN JONES, | : |
| Department of Veterans Affairs, | : |
| Home & Hospital, Security Officer, | : |
| *in both his official and individual capacities,* | : |
| | : |
| Defendant, | : |
| | : |
| FELIX DIAZ, | : |
| Department of Veterans Affairs, | : |
| Home & Hospital, Security Officer, | : |
| *in both his official and individual capacities,* | : |
| | : |
| Defendant, | : |
| | : |
| MICHAEL CEBRICK, M.D., | : |
| Department of Veterans Affairs, | : |
| Home & Hospital, Director of Medicine, | : |
| *in both his official and individual capacities,* | : |
| | : |
| Defendant, | : |
| | : |
| EUGENE A. MIGLIARO, | : |
| Commissioner, Department of Veterans Affairs, | : |
| *in both his official and individual capacities,* | : |
| | : |
| Defendant. | :          March 7, 2005 |

**<u>AMENDED COMPLAINT</u>**

The Plaintiff, complaining against the Defendants, alleges as follows:

**<u>INTRODUCTION</u>**

1. In October 2000, the plaintiff became aware of the intent of a kidnapping and sexual assault (GANG RAPE) against a female staff member of the Veterans Hospital by three individuals.

2. For over a week, the Plaintiff walked her to her car at the 11pm late evening shift change.

3. Finally, when as when the weather became cold and rainy, and the Plaintiff could not easily continue to walk the female to her car, the Plaintiff informed the Hospitals Director of Medicine about the potential assault. He promised, to take care of it and "to keep his name out of it", to insure anonymity.

4. The Director of Medicine informed the Hospital Administrator and the Director of Security of the information, without naming the Plaintiff as the source, as he previously had agreed.

5. In conflict with State Statutes, and Dept. of Veterans Affairs residential policy, the Director of Medicine did as he was ordered. He called and stated: "if you want to know about an assault upon a female, talk to Paul Copp at the Veterans Home and Hospital."

6. The Rocky Hill Police acted on the "tip", they obtained all the information the plaintiff had, and 'notified' the female.

7. The Rocky Hill Police (above) also asked the Plaintiff for suggestions on crime prevention at the State Veterans Home.

8. He suggested that they deny opportunity by replacing inoperative lighting in the parking lot used by nurses; providing a security presence at the shift change of 11pm, and denying free passage to some non-hospitalized residents since most are 'recovering'

substance abusers and have a history of violence. All his recommendations were adopted for a 'few' days.

9. It was learned at a later date from a Rocky Hill police detective that the Department of Veterans Affairs Security Officer Christopher Dunn insisted that the VA Security Crew on duty take over the case "immediately". All investigation was immediately stopped.

10. The Rocky Hill Police wrote a report that accurately described the incident. A joint review by the Veterans Affairs Director of Residential Services, and the Director of Security, after interviews with the Rocky Hill Police and others, determined that the Plaintiff was "the good guy" and so informed the Connecticut Commissioner of Veterans Affairs. The Commissioner on November 8, 2000, then wrote and signed a letter to the Plaintiff in congratulations.

11. After hearing of rumors at the Hospital and elsewhere, the Plaintiff asked the VA Director of Security, Hugo Adams, for a copy of the VA Security Departments Report on the incident. He would not give the report to the Plaintiff, but offered to let him read it. Hugo Adams read the report for the first time in the presence of the Plaintiff and was shocked to find the Plaintiff listed as the Criminal in the incident.

12. Security Officer Christopher Dunn and his Security shift personnel on the evening of the incident had informed the nursing supervisors and others that the Plaintiff was the criminal.

13. The nursing supervisors Claudette Gibson and Doris Fargo informed the entire staff that the Plaintiff was the perpetrator and criminal.

14. When it became known to Security Officer Christopher Dunn, that he had made a

serious mistake he did everything in his power to 'cover it up' with the assistance of other Security Officers to include Allen Jones and Felix Diaz.

15. When nursing supervisors Claudette Gibson and Doris Fargo learned of Security Officer Christopher Dunn's wrongful slander, they each conspired to maintain the slander and libel.

16. Security Director Hugo Adams, Hospital Administrator JoAnne Bloom, 3a Head Nurse RN Marsha Baker, and other supervisory Department of Veterans Affairs personnel, learned of the truth of the slander and libel and contributed to the continued perpetuation of the conspiracy.

17. At the plaintiff's request and insistence, the plaintiff was given a signed letter (November 8, 2000) by the State of Connecticut Department of Veterans Affairs Commissioner thanking the Plaintiff for thwarting the potential kidnapping, and gang rape of the female staff member.

18. The Plaintiff first attempted to show the Commissioner's letter to an interested party (the potential rape/assault victim, for her family's information). The letter was 'intercepted' by the B clinic head, RN Bill Bone, and the nursing supervisor on duty, Claudette Gibson. The Plaintiff was told that he would be "thrown out of here" if he showed the Commissioners letter to anyone. The Director of Security ordered the Director of Residential Services to inform the Plaintiff of same, and the Director of Residential Services so informed the Plaintiff. The plaintiff attempted in many ways to show copies of the letter to various staff members and on December 22, (two days before Christmas) and was summarily thrown out of the facility.

19. There have been numerous opportunities to correct this malicious slander and

character assassination by the Defendants. These opportunities included safety meetings concerned directly with the incident which involved the participation of nurses, nurse's aides, supervisors, and the like. Even though the Director of Security led these meetings, the malicious slander was continued and increased.

20. Finally on November 13, 2000, the plaintiff was assaulted while in bed at the Veterans Home at about 2:30 pm with the comment "I hear you like to rape women" A supervisor was informed a few hours later – no action was taken.

21. Fearing for his safety the Plaintiff was able to obtain little sleep and his weight wasted from 168 pounds to 147 pounds. His mental anguish was severe.

22. Because of the inept investigation, (Security Police never interviewed the Plaintiff or anyone else) and cover-up, not only were the aforesaid slanders, libel, and assault caused, but also three perpetrators are still at large and two are on the Hospital grounds and a continuing danger to female staff.

23. The plaintiff was ordered to leave the State Veterans Home, and was given a letter by the Director of Residential Services, that the Rocky Hill police would be called if the plaintiff ever set foot on the grounds of the State Veterans Home.

## **FIRST CAUSE OF ACTION**

24. The Plaintiff reiterates every allegation above made, as if here set forth at length and in full.

25. This First Cause of Action is directed against all the defendants in both their official and individual capacities, hereinafter, wherever appropriate referred to collectively as "the Public Defendants."

26. This is an action for compensatory and punitive damages, and arises under the

Due Process and Equal Protection clauses of the United States Constitution. This action, and the relief sought, is authorized by Title 42, United States Code, Sections 1983, 1985 and 1988, by the First Amendment of the United States Constitution, and by the Due Process and Equal Protection clauses of the United States Constitution.

27. The Public Defendants, individually and collectively, knowingly and wrongfully, and with deliberate indifference to the Plaintiffs rights, ordered the Plaintiff to leave the State Veterans home because he complained about his care and treatment and the care and treatment of other veterans and staff members of the Veterans Home.

28. The Defendants, individually and collectively, knowingly and with specific intent to violate the civil rights of the Plaintiff, spread rumors which were false, and were known by the Public Defendants to be false, to the effect that the Plaintiff intended to rape and/or assault a female staff member of the State Veterans Home.

## SECOND CAUSE OF ACTION

29. The Plaintiff reiterates every allegation above made in the introduction, as if here set forth at length and in full.

30. This Second Cause of Action is directed against all the defendants in both their official and individual capacities, hereinafter, wherever appropriate referred to collectively as "the Public Defendants."

31. This is an action for compensatory and punitive damages, and arises under the Due Process and Equal Protection clauses of the United States Constitution. This action, and the relief sought, is authorized by the First Amendment of the United States Constitution.

32. The Public Defendants, individually and collectively, knowingly and wrongfully,

and with deliberate indifference to the Plaintiffs rights, violated the Plaintiffs First Amendment right to enjoy free and voluntary association with other residents of the State Veteran's Home, by forcing him to leave the Home because he complained about his care and treatment, and the care and treatment of other veterans and staff members, by the State Veteran's Home.

### THIRD CAUSE OF ACTION

33.     The Plaintiff reiterates every allegation above made in the introduction, as if here set forth at length and in full.

34.     This Third Cause of Action is directed against all the defendants in both their official and individual capacities, hereinafter, wherever appropriate referred to collectively as "the Public Defendants."

35.     The Public Defendants, individually and collectively, knowingly and with specific intent, spread rumors which were false and were known by the Public Defendants to be false, to the effect that the Plaintiff intended to rape and/or assault a female staff member of the State Veteran's Home.

36.     The Court has pendant jurisdiction to hear this Third Cause of Action pursuant to 28 U.S.C. § 1367.

### REQUEST FOR RELIEF

WHEREFORE, the Plaintiff prays this Court to accept and retain jurisdiction of this matter until its completion; award judgment to the Plaintiff against the Defendants for compensatory damages; award to the Plaintiff the costs, expenses and disbursement of this action; award attorney's fees to the Plaintiff; an order from the Court directing the defendants to remove any information in their files which reflects the Plaintiff to be the

initiator or participant in the alleged rape and /or assault of the female nurse; AND grant such additional and further relief as may be just and proper.

Dated this 7th day of March, 2005, at Clinton, Connecticut.

        RESPECTFULLY SUBMITTED,
        THE PLAINTIFF

        By:_____
        Raymond J. Rigat, Esq.
        Gilbride & Rigat
        23 East Main Street
        Clinton, Connecticut  06413
        Tel.: (860) 669-3273
        Fax: (860) 669-3495
        e-mail: raymondjrigat@sbcglobal.net
        Federal Bar No.:  ct13320

## JURY DEMAND

The Plaintiff, by his counsel, respectfully demands a trial by a jury of six (6) persons on all issues in this action.

        _____
        Raymond J. Rigat, Esq.
        Attorney for the Plaintiff

## **CERTIFICATION**

I hereby certify that a copy of the forgoing "Amended Complaint" was sent, regular U.S. mail, on this 7th day of March, 2005, to the following:

Attorney M.J. McCarthy
Attorney General's Office- HRTFD
55 Elm Street, P.O. Box 120
Hartford, Connecticut 06141-0120

_____
Raymond J. Rigat, Esq.