UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAUL COPP,                         :
                                   :
     Plaintiff,                    :
                                   :
     v.                            :   CASE NO. 3:03CV119 (AWT)
                                   :
THE STATE OF CONNECTICUT DEPT. :
OF VETERANS' AFFAIRS, ET AL.,      :
                                   :
     Defendants.                   :

## RECOMMENDED RULING ON MOTION TO REOPEN

Pending before the court is the plaintiff's "Motion to Re-Open, and Enforce the Settlement Agreement." (Doc. #77.)[1]  The parties agree that they reached a settlement agreement at a May 25, 2006 settlement conference with the undersigned.  They disagree, however, about the scope of one key term of that settlement.

Because the parties had reported the case settled, it was closed on July 28, 2006 without prejudice to reopening within 30 days. (Doc. #76.)  Ten days later, on August 8, 2006, the plaintiff filed his motion to reopen. (Doc. #77.) Plaintiff's motion states, in its entirety, "As the written settlement agreement does not conform to the verbal agreement reached; and

_____

[1]The plaintiff's motion was referred to the undersigned by Judge Alvin W. Thompson on August 10, 2006, doc. #81. See Omega Eng'g, Inc. V. Omega, SA, 432 F.3d 437 (2d Cir. 2005)(a magistrate judge who oversaw the settlement conference at which a settlement was reached was not required to recuse himself from proceedings relating to enforcement of the settlement agreement, because his involvement was not extrajudicial).

the Defendant will not cooperate with the Plaintiff and with the Court; the Plaintiff moves to re-open and enforce an agreed agreement." (Doc. #77.)

A.    **Factual Background**

The plaintiff's motion, doc. #77, does not specify exactly what was wrong with the proposed settlement agreement, drafted by the defendants. Plaintiff's other filings are similarly conclusory. (See docs. #90,95.)

The defendants object to the plaintiff's Motion to Reopen. (See docs. #88, 96.) They argue that a settlement was reached on May 25, 2006, that the terms of that settlement were fully set forth in the draft settlement agreement and that the plaintiff is "simply attempting to get a better deal" and had "changed his mind." (Doc. #88 at 2; see also doc. #96 at 1.) They contend that they would not have agreed to the highly burdensome terms that the plaintiff claims they agreed to, and that granting the plaintiff's motion to reopen would undermine the finality of settlements and chill the state's willingness to settle cases in the future. (Doc. #88 at 3.)

The court held a second settlement conference with the parties on August 17, 2006 in an effort to help the parties resolve their disagreement. The dispute remained.

An evidentiary hearing on the plaintiff's motion was held on January 25, 2007. In advance of the evidentiary hearing, defense

2

counsel filed a stipulation titled "Parties' Filing in Response to Evidentiary Hearing Scheduling Order" (the "Stipulation"). (Doc. #99.)  Although the plaintiff did not sign the Stipulation, he confirmed at the evidentiary hearing that he had reviewed this document before it was filed and that he agrees with all of the stipulations contained therein. (Tr. at 5-7.)

The parties stipulate that a settlement conference was held on May 25, 2006 before the undersigned.  (Stipulation at ¶ 1.) They agree that the case was settled during that conference. (Stipulation at ¶ 2.)  On June 18, 2006, Assistant Attorney General M.J. McCarthy mailed the plaintiff the draft Settlement Agreement.  (Stipulation at ¶ 5.)  A copy of the draft Settlement Agreement was introduced at the hearing as part of Defendants' Exhibit 2.[2]  The draft Settlement Agreement, dated June 18, 2006, consists of three prefatory paragraphs, followed by 19 numbered paragraphs setting out the terms of the agreement.

The parties agree that "paragraphs 1-4, 6-9 and 11-19 of the June 2006 Settlement Agreement accurately reflected the parties'

---

[2]In Defendants' Exhibit 2, the draft Settlement Agreement is accompanied by a cover letter dated June 18, 2006 to the plaintiff from Assistant Attorney General M.J. McCarthy providing signing instructions.  Exhibit 2 also includes a document titled "Plaintiff's Motion to Withdraw Amended Complaint."  Ms. McCarthy explained at the January 25, 2007 evidentiary hearing that she drafted this document at the request of the undersigned, to help the plaintiff effect his desire of withdrawing an amended complaint that had been filed on his behalf by a former attorney. (Transcript of January 25, 2007 Evidentiary Hearing ("Tr."), doc. #104, at 24.)

intentions at the time of the May 25, 2006 Conference." (Doc. #99, ¶7.) They also stipulate that paragraph 5 of the June 2006 draft Settlement Agreement, which provides for a payment of $2,500 to the plaintiff, accurately memorialized the payment term agreed to at the settlement conference.[3]

The parties' only dispute is as to Paragraph 10 of the draft Settlement Agreement, which the parties have referred to as the notification provision. It reads as follows:

> 10. Further, the defendants agree to announce at the next "Safety Meeting" that the "litigation by Paul Copp against the [Department of Veterans' Affairs] has been settled by compromise by the Attorney General's Office, and the parties agreed to distribute a letter sent by the then Commissioner to Mr. Copp." A copy of the November 8, 2000 letter will be distributed.

The Stipulation states that "The parties acknowledge that paragraph 10 of the Settlement Agreement accurately memorialized a portion of the agreement reached at the May 25 Settlement Conference. The plaintiff believes that due to the serious nature of the allegations at issue notice on a broader scale is necessary." (Stipulation, ¶ 9.)

The defendants take the position that the draft agreement reflects the entire agreement between the parties. The plaintiff takes the position that Paragraph 10 reflects only a portion of

---

[3]The Stipulation notes, however, that the plaintiff believes the defendants should be financially penalized for their bad faith conduct since the settlement conference, or that he should receive a larger payment to permit him to send the notices that the defendants refuse to distribute. (Stipulation, ¶ 8.)

the agreement, because the parties agreed not only to a safety meeting announcement but also to a broader notification to be sent to residents and employees of the Veterans' Home.

At the evidentiary hearing, the plaintiff did not present any testimony.  Despite being reminded that he carried the burden on his motion, (Tr. at 17-18), he did not take the stand or call any other witness.  His evidence was limited to his cross-examination of the defendant's witness.

After the plaintiff rested, the defendants called M.J. McCarthy, the former counsel for the defendants.[4]  Ms. McCarthy participated in the settlement conference with the plaintiff on May 25, 2006.  She explained that each party met with the undersigned alone, and then a joint meeting took place.  The settlement agreement was reached during the joint discussion at the end of the conference. (Tr. at 22-23.)

Ms. McCarthy testified that the settlement they agreed to consisted of five terms.  First, because the plaintiff was unhappy with the amended complaint that a previous attorney had filed on his behalf, he wanted it withdrawn so that his original complaint would be the operative complaint.  At the request of the court, Ms. McCarthy agreed to draft a withdrawal for the

---

[4]Ms. McCarthy withdrew her appearance in August 2006, when she moved to her current position as Assistant Director of Legal and Governmental Affairs for the Department of Mental Retardation. (Doc. #82, see also Tr. at 20.)

plaintiff's signature.  The second term was that the defendants would pay the plaintiff $2,500.  Third, the defendants agreed to redact their files on the plaintiff, removing any reference to the plaintiff being involved in a potential sexual assault. Fourth, at the next Safety Meeting, the defendants would announce that a settlement had taken place and distribute a letter from the former Commissioner.[5]  Fifth, the plaintiff would, at his convenience, draft a letter to the Commissioner and Ms. McCarthy would make sure that it reached the Commissioner.  Ms. McCarthy testified that when she left the settlement conference, she was confident that a settlement agreement had been reached.  (Tr. at 21-23.)

Reviewing Defendant's Exhibit 2, Ms. McCarthy testified that she mailed the draft Settlement Agreement to the plaintiff on June 18, 2006.  The first page of Exhibit 2 is a cover letter addressed to Mr. Copp.  The second document is a draft withdrawal that Ms. McCarthy drafted for him at the court's request.  The third document was the proposed Settlement Agreement, which she

---

[5]The letter that was to be distributed was admitted as Plaintiff's Exhibit 1 at the Evidentiary Hearing.  It is a November 8, 2000 memorandum to Paul Copp from the former Commissioner of the State of Connecticut Department of Veterans' Affairs.  It reads, "Mr. Paul Copp of 'C' Wing is to be congratulated for providing crucial information to a staff person and then, subsequently, to a local Police Department.  The information given may have thwarted possible criminal activity taking place on our grounds.  Actions such as these should be recognized and commended."

signed.  (Tr. at 24-26.)

     Ms. McCarthy testified that her intention was that the draft
Settlement Agreement would put in writing all the terms of the
parties' agreement, and she believes that it does exactly that.
She stated that Paragraph 10 was the entire notification
provision agreed to by the parties.  The defendants never agreed
to provide notification to anyone else.  She testified that she
"absolutely" did not agree to send notice to all staff and
residents from November 1999 to the present, because that would
have been overly burdensome to her client. (Tr. at 26-28, 35-23.)

     On cross-examination, the plaintiff asked Ms. McCarthy
whether she remembered calling him on the day that she was
working on the draft agreement.  She did.  He asked whether she
recalled that before that phone call, she had completely
neglected to put in a notification provision of any sort.  Ms.
McCarthy responded that she remembered talking to him about each
provision, that he made some comments, and that she incorporated
those comments into the draft agreement before sending it to him.
Therefore, she was satisfied that, when she sent it to him, the
draft Settlement Agreement contained the entire terms of their
agreement. (Tr. at 28-33.)

     The plaintiff also suggested to Ms. McCarthy on cross-
examination that she did not know before the settlement
conference what a "safety meeting" was.  She responded that her

client had explained to her what a safety meeting was.  In her understanding, safety meetings were periodic meetings, primarily for employees, where safety issues were discussed.  (Tr. at 33-34, 36.)

When asked what she understood Mr. Copp's goals to be at the settlement conference, Ms. McCarthy testified that she believed he wanted to resolve the case, to obtain some payment to defray the costs he had expended in litigation, and to make sure that individuals were made aware of the Commissioner's letter.  She added that, in her opinion, the draft agreement met all of those goals. (Tr. at 38.)

Ms. McCarthy was the only witness called by the defendants. At the close of the evidence, Mr. Copp stated "We've said . . . what has to be said."  (Tr. at 39.)  Neither party presented any further legal argument.  (Tr. at 40.)

**B.    Legal Standard**

The plaintiff's legal argument, liberally construed, is that the defendants' draft settlement agreement did not fully memorialize the terms agreed to at the May 25, 2006 conference and that the court should either reopen the case or, in the alternative, enforce the agreement that was reached on May 25.

The plaintiff has not cited any caselaw or rule in support of his Motion to Reopen.  However, Fed. R. Civ. P. 60(b) permits the court to reopen a case for several enumerated reasons.  These

include "fraud ... misrepresentation, or other misconduct of an adverse party." Fed. R. Civ. P. 60(b)(3)  The court may also reopen judgment for any reason "justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6).  Relief under Rule 60(b)(6) is warranted "where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship." DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir. 1994).

"Under Connecticut law the proponent of a contract must prove the existence of a valid agreement by a preponderance of the evidence." Omega Eng'r, Inc. v. Omega, S.A., 432 F.3d 437, 447 (2d Cir. 2005) (citing Chem-Tek, Inc. v. Gen. Motors Corp., 816 F. Supp. 123, 131 (D. Conn. 1993); Coelho v. Posi-Seal Int'l, Inc., 208 Conn. 106, 112, 544 A.2d 170, 173 (1988)).  Once the existence of a settlement agreement is established, the burden of proof is on the party seeking to reopen the case.  "One who attacks a settlement agreement must bear the burden of showing that the contract he made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." Brown v. Nationscredit Commer. Corp., 2000 U.S. Dist. LEXIS 9153 (D. Conn. 2000) (quoting Callen v. Pennsylvania R.R. Co., 332 U.S. 625, 630(1948)); see also Omega Eng'r, Inc. v. Omega, S.A., 432 F.3d 437, 447 (2d Cir. 2005).

The court has the power to enforce a settlement agreement

reached in a case pending before it.  <u>Acot v. New York Med.</u>
<u>College</u>, 99 Fed. Appx. 317, *3 (2d Cir. 2004) (citing <u>Janus</u>
<u>Films, Inc. V. Miller</u>, 801 F.2d 578, 583 (2d Cir. 1986));
<u>MacDonald v. Dragone Classic Motor Cars</u>, No. 3:95CV499(JBA), 2003
U.S. Dist. LEXIS 14587, *20 (D. Conn. 2003).  An oral settlement
agreement is enforceable even if not reduced to writing or put on
the record.  <u>See, e.g.</u>, <u>Brents v. Esprit de Corps Resource Group,</u>
<u>LLC</u>, No. 3:02CV1958(DJS), 2004 U.S. Dist. LEXIS 19633, *6 (D.
Conn. 2004).  "[O]nce reached, a settlement agreement constitutes
a contract that is binding and conclusive and the parties are
bound to the terms of the contract even if a party has a change
of heart between the time of the agreement to the terms of the
settlement and the time it is reduced to writing." <u>MacDonald</u>,
2003 U.S. Dist. LEXIS 14587 at *19.  "'When a party makes a
deliberate, strategic choice to settle, she cannot be relieved of
such a choice merely because her assessment of the consequences
was incorrect.'"  <u>Acot v. New York Medical College</u>, 99 Fed. Appx.
317, 318 (2d Cir. 2004) (quoting <u>United States v. Bank of New</u>
<u>York</u>, 14 F.3d 756, 759 (2d Cir. 1994).

**C.    <u>Conclusion</u>**

    The court has thoroughly reviewed the entire record,
including the parties' briefing and the testimony presented at
the evidentiary hearing.  The court finds that an enforceable
settlement agreement was reached on May 25, 2006 and that the

terms of that agreement were fully and accurately set forth in the draft Settlement Agreement prepared by Ms. McCarthy.

The plaintiff has not met his burden of demonstrating that the draft Settlement Agreement failed to incorporate the parties' entire agreement.  Ms. McCarthy's testimony, which the court finds to be credible and cogent, was that Paragraph 10 of the draft Settlement Agreement incorporated the parties' entire agreement as to notification. (Tr. at 26-28, 33.) The plaintiff presented no evidence to the contrary.  Based on the entire record, the court finds that the draft Settlement Agreement accurately memorializes the parties' entire agreement.  There was no evidence of fraud or mistake, and there are no extraordinary circumstances that would permit the court to reopen the case.

For all the foregoing reasons, the court recommends that the plaintiff's Motion to Re-Open and Enforce the Settlement Agreement (doc. #77) be denied.  The court further recommends that the terms of the parties' agreement be enforced.

Any party may seek the district court's review of this recommendation.  See 28 U.S.C. § 636(b)(written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968

F.2d 298, 300(2d Cir. 1992).  "[F]ailure to timely object to a magistrate judge's report within ten (10) days will preclude appellate review."  <u>Small v. Sec'y of Health and Human Serv.s</u>, 892 F.2d 15, 16 (2d Cir. 1989).

    SO ORDERED at Hartford, Connecticut, this 13th day of February, 2007.

```
_____/s/_____
Donna F. Martinez
United States Magistrate Judge
```